# 24-2627

## United States Court of Appeals

### for the Second Circuit

IN RE APPLICATION OF DUSSAN DAVID KIPPERBAND, IVAN KIPPERBAND
AND MARA KIPPERBAND,
*Applicants-Appellees*,

v.

MARLEN KIPPERBAND,
*Intervenor-Appellant,*

v.

CITIBANK, N.A.; THE BANK OF NEW YORK MELLON; SOCIÉTÉ GÉNÉRALE, NEW YORK
BRANCH; HSBC BANK USA, N.A.; BNP PARIBAS USA; JP MORGAN CHASE BANK, N.A.;
WELLS FARGO BANK, N.A.; DEUTSCHE BANK TRUST CO. AMERICAS; UBS AG; BANK OF
AMERICA, N.A; BANK OF CHINA, NEW YORK BRANCH; STANDARD CHARTERED BANK US;
COMMERZBANK AG, NEW YORK BRANCH; THE CLEARING HOUSE PAYMENTS COMPANY
L.L.C.,
*Respondents.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, NO. 24-MC-00239(AKH)**

_____

**BRIEF AND SPECIAL APPENDIX FOR
INTERVENOR-APPELLANT MARLEN KIPPERBAND**

_____

PETER R. BRYCE
WHITEMAN OSTERMAN & HANNA LLP
One Commerce Plaza, 19th Floor
Albany, NY 12260
(518) 487-7600

TAI H. PARK
TAI PARK, PLLC
7 World Trade Center, 34th Floor
250 Greenwich Street
New York, NY 10007
(212) 301-7632

November 20, 2024

*Counsel for Intervenor-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................... iii

JURISDICTIONAL STATEMENT .................................................... 1

ISSUES PRESENTED.............................................................. 1

PRELIMINARY STATEMENT ....................................................... 2

STATEMENT OF FACTS .......................................................... 6

    A.    Statutory Background........................................... 6

    B.    The Argentine Proceedings ..................................... 8

        1.    The Estate Dispute ....................................... 8

        2.    The Akipa Assets ......................................... 9

        3.    Appellee Dussan Seeks Discovery of Appellant's Assets ................................................... 10

    C.    The District Court Proceedings ............................... 13

        1.    Section 1782 Application................................. 13

        2.    The District Court's Orders and Procedural Background ............................................... 17

            i.    September 3 Order....................................... 19

            ii.    September 25 Order...................................... 20

            iii.    Order Denying Stay Pending Appeal ............................. 21

STANDARD OF REVIEW .......................................................... 22

SUMMARY OF ARGUMENT ........................................................ 23

ARGUMENT .................................................................... 27

    POINT I

    THE DISTRICT COURT ERRED IN CONCLUDING DISCOVERY WOULD BE "FOR USE" IN FOREIGN PROCEEDINGS............................................... 27

i

POINT II

THE DISTRICT COURT ABUSED ITS DISCRETION IN
FAILING TO WEIGH THE *INTEL* FACTORS...........................................35

    A.    The District Court Failed to Consider the First *Intel* Factor...............36

    B.    The District Court Failed to Consider the Third *Intel* Factor ............40

    C.    The District Court Failed to Consider the Fourth *Intel* Factor............43

POINT III

THE DISTRICT COURT ABUSED ITS DISCRETION IN
DENYING APPELLANT'S RULE 45 MOTION TO QUASH..................49

CONCLUSION ......................................................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ahmad Hamad Algosaibi & Bros. Co. v.*
*Standard Chartered Int'l (USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011) ......................................................47

*Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*,
461 U.S. 402 (1983)..................................................................................36

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) .............................................................. *passim*

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) .......................................................................1

*During v. City Univ. of N.Y.*,
No. 05-cv-6992 RCC, 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006)............50

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998)............................................................ 32, 34, 35

*Frasers Grp. PLC v. Stanley*,
95 F.4th 54 (2d Cir. 2024)............................................................ 22, 36, 46

*Henry v. Morgan's Hotel Grp., Inc.*,
No. 15-cv-1789 (ER), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016)..............49

*Huang v. I.N.S.*,
436 F.3d 89 (2d Cir. 2006).......................................................................36

*IJK Palm LLC v. Anholt Services USA, Inc.*,
33 F.4th 669 (2d Cir. 2022)...................................................................7, 30

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)............................................................ 7, 27-28

*In re Application of Auto-Guadeloupe Investissement S.A.*,
No. 12-mc-221 (RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)..... 48-49

*In re Application of Euromepa, S.A.*,
51 F.3d 1095 (2d Cir. 1995)............................................................... 43, 47

*In re Asia Mar. Pac., Ltd.*,
253 F. Supp. 3d 701 (S.D.N.Y. 2015)............................................. 34-35, 44

*In re BonSens.org*,
    95 F.4th 75 (2d Cir. 2024) ....................................................... 30, 31

*In re Elvis Presley Enters., LLC*,
    No. 15-mc-386 (DLC), 2016 WL 843380 (S.D.N.Y. March 1, 2016) .........43

*In re Ex parte Klein*,
    No. 23-mc-211 (PAE), 2023 WL 8827847
    (S.D.N.Y. Dec. 21, 2023) ................................................. 39, 44, 48

*In re Glitnir banki hf.*,
    No. 08-14757 (SMB), 2011 WL 3652764
    (Bankr. S.D.N.Y. Aug. 19, 2011) ........................................ 47, 50

*In re Gorsoan, Ltd. For an Order Pursuant to 28 U.S.C. § 1782 to
    Conduct Discovery for Use in a Foreign Proceeding*,
    843 F. App'x. 352 (2d Cir. 2021) ....................................... 7, 27, 34

*In re Hranov*,
    No. 21-mc-751 (PKC), 2024 WL 2193866 (S.D.N.Y. May 15, 2024).........39

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997).............................................................40

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH &
    Co. KG*,
    No. 15-mc-319 (LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ...... 35, 48

*In re Nascimento*,
    No. 14-mc-0020 (RMB), 2014 WL 4457141 (S.D.N.Y. May 13,
    2014); *aff'd sub nom. Nascimento v. Faria*, 600 F. App'x 811
    (2d Cir. 2015)...............................................................................33

*In re Porsche Automobil Holding SE*,
    No. 15-mc-417 (LAK) 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ...........36

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241(2004)................................................................ *passim*

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*,
    No. 14-cv-9997 (CM), 2015 WL 3439220 (S.D.N.Y. Feb. 15, 2015)..........34

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018).................................................... *passim*

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020)....................................................................7, 28

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)................................................. *passim*

*Morocho v. Stars Jewelry by the A Jeweler Corp.*,
345 F.R.D. 292 (S.D.N.Y. 2024).....................................................49

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004)................................................... 36-37

*Sierra Rutile Ltd. v. Katz*,
No. 90-cv-4913 (JFK), 1994 WL 185751 (S.D.N.Y. May 11, 1994)............50

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1782 ............................................................................. *passim*

28 U.S.C. § 1782(a) ......................................................................... 6, 8, 35

Fed. R. Civ. P. 26 ............................................................................ *passim*

Fed. R. Civ. P. 26(b)(1) ................................................................... 43, 50

Fed. R. Civ. P. 26(c)(1)....................................................................50

Fed. R. Civ. P. 45 ........................................................................................2

Fed. R. Civ. P. 45(d) ....................................................................... *passim*

Fed. R. Civ. P. 45(d)(3)(A) ..............................................................49

N.Y. Banking Law § 239-a...............................................................45

## JURISDICTIONAL STATEMENT

The District Court (Hellerstein, J.) had jurisdiction under 28 U.S.C. § 1331. On September 3, 2024, the court entered an order granting Applicant-Appellees' ("Appellees") application for leave to issue subpoenas to 14 Respondent financial institutions for the production of documents pursuant to 28 U.S.C. § 1782 ("the Application"), JA183, and on September 25, 2024, the court entered an order denying Intervenor-Appellant Marlen Kipperband's ("Appellant") motion to quash the subpoenas. JA187-188.

Appellant noticed a timely appeal on September 30, 2024. JA189. This Court has jurisdiction under 28 U.S.C. § 1291. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (an order granting a Section 1782 application is an appealable final order).

## ISSUES PRESENTED

1. Whether the District Court erred in concluding that Appellees satisfied their burden of demonstrating the discovery they sought would be "for use" in Argentine legal proceedings, as required by 28 U.S.C. § 1782, where: (a) Appellees and the District Court ignored the fact that an Appellee had already sought similar discovery before an Argentine court and the court rejected the application due to procedural defects and (b) the proposed, sweeping subpoena on its face sought matters irrelevant to Argentine proceedings.

1

2. Whether the District Court abused its discretion in granting Appellees' Application for judicial assistance despite the weight of the *Intel* factors, where: (a) the bank records they sought were those of Appellant who is a party to litigation in Argentina and thus available in Argentina; (b) Appellees sought to circumvent the ruling of the Argentine court, and (c) the subpoenas seeking Appellant's bank records were unduly burdensome and intrusive.

3. Whether the District Court abused its discretion in denying Appellant's motion to quash subpoenas pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure as over-broad and intrusive, where they were served upon 14 financial institutions seeking Appellant's bank records spanning 22 years for every transaction over $5,000, without any subject matter limitation.

## PRELIMINARY STATEMENT

The purpose of 28 U.S.C. § 1782 is to help foreign litigants and courts gather facts and evidence that are relevant to foreign legal proceedings. This judicial assistance in discovery furthers comity and encourages foreign courts to reciprocate in the future. In light of this purpose, the key question for any Section 1782 application is whether the foreign proceeding actually needs the help of U.S. courts. This question cannot be answered unless the U.S. court examines what is actually happening in that foreign jurisdiction.

Yet, the District Court below refused to address the facts of the foreign proceeding, despite Appellant's repeated reference to the fact that the Argentine court had actually rejected Appellees' efforts to gain the same discovery in Argentina that Appellees now seek here. The District Court did not consider and reject the relevance of these facts and circumstances; it simply ignored them. Its decision granting the Section 1782 application must be reversed.

The governing law is clear. Before judicial assistance can be granted, the applicants must demonstrate that they seek discovery that will be "for use" in the foreign proceeding, and not in some fishing expedition or a generalized search for assets that might be used in a future judgment enforcement proceeding. Moreover, if the foreign court has the same means of obtaining discovery as the U.S. court, there obviously is no reason to grant judicial assistance applications here. This is especially so if it appears the application seeks to circumvent the foreign judicial authority, rather than assisting it. Finally, if the discovery sought fails to comply with the basic requirement of relevance and proportionality required by Rule 26 of the Federal Rules of Civil Procedure, courts will reject the application. Here, every one of these pragmatic factors militated against Appellees' Application.

Appellant Marlen Kipperband and her brother Benjamin are the sole heirs named in their father Pinchos' will in Argentina. They had to endure decades of litigation from their brother Jacobo and his three children, the Appellees, who have

battled for recognition as heirs to their grandfather Pinchos' estate, even though Pinchos had cut their father Jacobo out of his will. On May 22, 2024, the Appellees suffered one of many litigation set-backs in the Argentine court. Appellee Dussan had asked the court for a broad order requiring discovery of Appellant's and Benjamin's assets as they pertain to the Pinchos estate. But the Argentine court rejected that application because of procedural infirmities.

Two days after that adverse ruling, Appellees ran to the Southern District of New York claiming to seek the same discovery, but without disclosing to the District Court the Argentine court's ruling. Their discovery demand expanded well beyond what they sought in Argentina, in a manner that can only be characterized as harassment. Appellees wanted subpoenas sent to 14 financial institutions seeking records of every correspondent bank transaction exceeding $5,000 that Appellant, Benjamin and their children engaged in for the past 22 years, without any subject matter limitation of any kind.

After Appellant intervened, opposed the Application and explained that the Argentine court had rejected the discovery Appellees now claimed to seek in the U.S., the District Court nevertheless granted their Application. Ignoring the Argentine ruling, the District Court issued a brief order entered on the docket with no separate opinion. The order addressed none of Appellant's arguments in opposing their Application. It did not answer the question how this discovery

4

would be "for use" in Argentina, as the statute requires, when the Argentine court had rejected efforts to discover Appellant's assets, and it did not address the fact that Appellees plainly sought to circumvent the Argentine judicial authority. It is as if the Argentine ruling had never occurred.

Moreover, when Appellant later sought to quash the subpoenas pursuant to Rule 45(d) and 26 of the Federal Rules of Civil Procedure, the court brushed off the concerns about relevance and undue intrusion into Appellant's privacy by concluding that any such concerns could be remedied by a protective order. It gave no attention to Appellant's argument that a protective order could not prevent the immediate harm to Appellant when her adversaries and their lawyers gained access to financial details of her life having no relevance to any estate dispute.

The District Court orders should be reversed because it erred in concluding the discovery would be "for use" in Argentina, and because it abused its discretion in ignoring the actual facts and circumstances of the Argentine proceedings. Appellees' remedies are, and always have been, in Argentina. That court is far more capable of adjudicating demands for asset discovery in an estate dispute that has been going on for decades, under Argentine law, than any U.S. court. Appellees may be unhappy with the Argentine ruling, but Section 1782 is not a vehicle for circumventing the foreign court's authority.

5

Moreover, even if some judicial assistance were warranted, the District Court abused its discretion in granting the extraordinarily broad and intrusive subpoenas here. A search for every financial transaction over 22 years without subject matter limitation is patently unreasonable and threatens to vacuum in every detail about a person's private financial affairs. On its face, the subpoenas fail the relevance test of Rule 26 and should never have been granted.

## STATEMENT OF FACTS

### A. Statutory Background

28 U.S.C. Section 1782 authorizes district courts to provide judicial assistance in discovery for use in foreign proceedings.[1] The statute is designed to promote judicial comity; its twin goals are to: "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to

---

[1] The statute provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person ….

28 U.S.C. § 1782(a).

our courts." *IJK Palm LLC v. Anholt Services USA, Inc.*, 33 F.4th 669, 676 (2d Cir. 2022) (internal citation and quotation omitted); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018).

A statutory precondition for judicial assistance is that the discovery will be "for use in a foreign proceeding before a foreign [or international] tribunal." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *In re Gorsoan, Ltd. For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 843 F. App'x. 352, 355 (2d Cir. 2021) (reversing grant of judicial assistance). To satisfy this requirement, the applicant must demonstrate "the practical ability … to place [the documents sought]—or the information [they] contain[]—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original). The discovery must be capable of "employ[ment] with some advantage" in the foreign proceeding. *Mees*, 793 F.3d at 298. The prospect of that proceeding where the evidence will be used must be "more than merely speculative." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020). The applicant for judicial assistance bears the burden of establishing the "for use" requirement. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 n.11 (2d Cir. 2015).

Moreover, even if the statutory requirements are met, the Court may, in its discretion, deny the application if it fails the four-factored review described in *Intel*

7

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These are: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome'". *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264-65).

## B. The Argentine Proceedings

### 1. *The Estate Dispute*

This matter arises out of a dispute between Ms. Kipperband and other family members regarding the estate of her father, Pinchos Kipperband ("Pinchos"), who died in November of 2002. JA12 (¶ 9). Before he passed away, Pinchos disinherited Ms. Kipperband's brother Jacobo because earlier that year, Jacobo had accused his father of criminal misconduct. *Id*. This left Appellant and Benjamin as Pinchos' sole heirs. Pinchos then passed away on November 23, 2002 in Buenos Aires, Argentina. *Id*.

After Pinchos' death, however, Jacobo and his children engaged in a series of litigation in Argentine courts to contest the estate distribution. JA130-131 (¶¶ 2-3). Jacobo himself passed away in 2022 (JA12), but his children, Dussan David Kipperband ("Dussan"), Ivan Kipperband and Mara Kipperband (collectively "the Appellees"), continued to prosecute their estate claims in Argentina. JA130-131 (¶¶ 2-3). Marlen's brother Benjamin passed away in 2010. JA11-12 (¶ 7).

The original estate litigation began in 2003, under the caption "KIPPERBAND PINCHOS /SUCESION AB_INTESTATO" ("Intestate Action"). While entitled "intestate", unlike in the United States, the term "intestate" does not imply the absence of a will; rather, in Argentina, it implies that there may be certain distributions of the estate which may be required as a matter of law even if, as here, a valid will exists. JA131 (¶¶ 3, 5).

### 2. The Akipa Assets

In their Application, Appellees claim that the discovery they seek is principally to learn what happened to the so-called Akipa assets. They allege: "[i]n 2014, Jacobo obtained documentary evidence showing the existence of a foundation established initially in Liechtenstein named 'Akipa Stiftung' and relocated in 2001 to Curacao under the name of 'Stichting Particulier Fonds Akipa.' (hereinafter, 'Akipa'). Those assets were immediately appropriated and split between Marlen and Benjamin, in equal parts, right after Pinchos' death, and

remain undivided to this date." JA13 (¶ 13). Appellees go on to allege that in a series of transactions in late 2002 and 2003, Ms. Kipperband and Benjamin improperly transferred Akipa assets to their own accounts. JA19-20 (¶¶ 24, 29).

### 3. *Appellee Dussan Seeks Discovery of Appellant's Assets*

Beginning in 2022, in Argentina, Appellee Dussan David Kipperband ("Dussan") sought discovery of Appellant and Benjamin's assets as they relate to the Pinchos estate and the Akipa assets. Specifically, he filed a "partition" proceeding in 2022, captioned "KIPPERBAND, DUSSAN DAVID C/ KIPPERBAND SZTEIN, MARLEN Y OTROS S/PARTICION DE HERENCIA" (the "Partition Action"). JA130 (¶ 2). This Action set forth the same claims about the alleged misappropriation of the Akipa assets as are described in the Application. (*Compare* JA98-103 *with* JA13-16).

As relief, the Partition Action sought, *inter alia*, the "integration" of Appellant's assets into the estate for distribution and asked the Argentine court to order the "production of . . . evidence with the purpose of . . . subsequent restitution to the estate"; and "request[ing] the drawing up of an inventory including the assets herein disclosed." JA91. Moreover, the filing sought a "Report of Assets Comprising the Estate and Evidence of Their Disposition by Co-Heirs [Appellant] Marlen and Benjamin". JA96.

10

The Partition Action further reveals that Appellees had previously sought discovery of Appellant's assets from the Argentine court. Appellee Dussan states that his siblings, Appellees Ivan and Mara, tried to obtain by letters rogatory discovery of Appellant and Benjamin's assets as they pertain to Akipa assets. JA105. He argued that the fact that "such measures [were] unsuccessful, does not preclude this petition from being admissible." *Id*.

On May 22, 2024, the Argentine court rejected Appellee's Partition Action and its request for discovery, finding that the document was procedurally defective. Among other requirements, the court held that Dussan "must duly comply with the provisions Section 330, Procedural Code, . . . specifying [the] claim's subject matter, i.e., the assets owned by deceased whose settlement . . . is sought." JA130 (¶ 13), and JA154. In other words, Dussan was to set forth Pinchos' assets in 2002 when he died. JA132-33 (¶ 13), and JA175. In effect, the Partition Action was suspended or dismissed subject to Appellees' satisfaction of Argentine procedural requirements.

The Intestate Action met with the same result. On May 29, 2024, the same Argentine court found that Appellees needed to comply with procedural requirements before proceeding, and that they were not yet formally deemed "heirs." The court held that all the "heirs, creditors and all those who consider themselves entitled to the property left by decedent" were "summoned to prove it

11

within a 30-day term." JA133 (¶ 14) and JA164. As for Appellees' status, the court stated: "Petitioner is hereby informed that the decree of pages 831/837 confirmed by the Higher Court on pages 966/968 in the case titled 'Kipperband, Pinchos on Civil Incident' No. 36.085/2004 was <u>not</u> a ruling acknowledging the heirs to an intestate succession, as erroneously stated in the [Appellees'] pleading, but a decision regarding the power of [Appellees] to accept the inheritance that was deferred due to their grandfather's death". JA163 (emphasis added).

In Argentina, there is a difference between being declared an "heir" and being found to have a "vocation" (literally, a calling) to claim such status. JA133-134 (¶¶ 16-18). At most, Appellees have the "vocation" to claim the status of heir, but that is all. The court required Appellees to comply with a number of procedural requirements in order to pursue their claims as heirs, including notifying the registry of one's vocation, notifying other individuals and entities who have a vocation, and publishing an advertisement, among other procedural requirements. JA133-134 (¶ 17).

Moreover, in the Intestate Action, Appellee Dussan had added the Partition Action and the relief sought therein. JA13 (¶ 15) and n.5; JA163 ("in view of what has been requested, the filing dated 11/18/22 is provided"). But the Argentine court denied that relief as "beyond the scope of knowledge" of the Intestate Action

12

and referred it to the Partition Action. JA163 (¶ II) ("the framework of the claims in [the Partition Action] should be followed").

In short, until and unless Appellees satisfy the procedural requirements that the Argentine court identified for both their actions, there is no current foreign proceeding.

## C. The District Court Proceedings

### 1. *Section 1782 Application*

Two days after the Argentine court's adverse ruling in the Partition Action, on May 24, 2024, Appellees filed their Section 1782 Application before the District Court (Hellerstein, J.). JA1-3. They claimed they sought discovery of Appellant and Benjamin's assets as they relate to the Pinchos estate. They filed the Application *ex parte*, and urged the Court to grant their application without notifying Appellant. JA1-3, JA21-23 (¶¶ 37-41). While the Application discussed the two Argentine proceedings and the long-standing estate dispute in detail, it did not disclose the fact that the Argentine court had rejected the same discovery in the Partition Action.

This omission is striking. To support the factual assertions in the Application, their Argentine lawyer, Guillermo Jorge, submitted a declaration and attached as Exhibit D, a copy of their Partition Action in which they claimed misappropriation of Akipa assets and sought discovery of Appellant's assets in

13

Argentina.  The factual assertions in Exhibit D virtually mirror the Jorge declaration annexed to the Application. *Compare* JA98-103 *with* JA13 (¶¶ 13, 15). The Application claims the discovery would be used "in connection with [the Argentine] proceedings to trace and locate the assets described above, and to identify and trace any other undisclosed assets that Marlen and/or Benjamín may have concealed between the time of Pinchos' death and the present." JA19-20 (¶ 26). They seek "to (reversely) trace the assets that were transferred from Akipa Foundation's accounts to Marlen and Benjamin's accounts, especially in 2002 and 2003." JA20 (¶ 29).  They claim that "[t]his will help determine the legitimate portion that, by law, corresponds to the incorporation of the estate in the [Argentine] Proceedings." JA21 (¶ 31).

Ignoring the Argentine court ruling, Appellees also represented to the District Court: "The Application does not seek to circumvent any existing or anticipated evidence gathering restrictions imposed in Argentina." JA21 (¶ 34). And in seeking *ex parte* treatment, the Application claimed: "The information sought through this *ex parte* Application is the only practical and efficient way Applicants can obtain the discovery sought." JA22 (¶ 37).

In fact, their request for discovery was the least "practical and efficient" means for tying Appellant's and Benjamin's assets to the Pinchos estate.  As described in its "sample subpoena," the Application seeks to serve on 13 New

14

York banks and one clearinghouse[2] ("Banks") subpoenas that require them to create "logs or spreadsheets listing all wire transfers" exceeding $5,000 by Appellant, Benjamin and their children that passed through the Banks as intermediary or correspondent bank "as well as bank records relating thereto." JA7. The time period is from "November 23, 2002, and the present day." JA6, JA11 (¶ 5). These records are to include "<u>payment messages</u> (in their entirety) regarding and/or accompanying any wire transfers.…" JA7 (emphasis in original). Such messages are to include "the data and/or information, … including … the originator (including, but not limited to, name, address, and account number), the originator's bank, all intermediary banks, the beneficiary's bank, the beneficiary (including, but not limited to, name, address, and account number), and reference field(s)." *Id.*

The targeted accounts are listed in "Table A": Appellant Marlen and Benjamin Kipperband; Marlen's children Ambar Shayanna Kleinbort and Mycchaka Kleinbort, as well as Benjamin's children Vanesa Kipperband,

---

[2] These are: (i) Citibank, N.A.; (ii) The Bank of New York Mellon; (iii) Société Générale, New York Branch; (iv) HSBC Bank USA, N.A.; (v) BNP Paribas USA; (vi) JPMorgan Chase Bank, N.A.; (vii) Wells Fargo Bank, N.A.; (viii) Deutsche Bank Trust Co. Americas; (ix) UBS AG; (x) Bank of America, N.A.; (xi) Bank of China, New York Branch; (xii) Standard Chartered Bank US; (xiii) Commerzbank AG, New York Branch, and (xiv) The Clearing House Payments Company L.L.C. (the "Clearing House"). JA20 (¶ 27).

Sebastian Kipperband and Alejandro Damian Kipperband. Three entities listed are

Milarey S.A., Campcella Ltd., and Whiteleaf Ltd. JA7-9.

The Application does not contain any allegations about any of the children

of Appellant or Benjamin that could tie them to the Pinchos estate or the Akipa

assets that Appellees are supposedly in search of.  Moreover, the sample subpoena

does not reference either Pinchos or Akipa and its scope is not limited to such

person or entity.  Appellees told the District Court that the purpose of their

Application is "to obtain evidence relating to undisclosed assets of Applicants'

uncles Marlen and Benjamin, wherever those assets may be located, to advance the

Foreign proceedings." (Dkt. No. 4 at 12-13).  They asserted that they seek

discovery of the "complete picture of the movement of funds between Marlen and

Benjamin, their companies, family members and other related entities and

individuals." JA21 (¶ 31).

They accuse Appellant and her brother Benjamin of "misappropriation" of

the Akipa foundation assets (JA17 (¶ 17)) but their own factual allegations

undermine the characterization, as it is clear Appellant and Benjamin were the sole

owners of the assets.[3]

---

[3] According to Appellees' allegations, when Pinchos was disinheriting Jacobo, in May 2002, he
also amended the Akipa Foundation documents to "remove[] Jacobo as Akipa's beneficiary due
to the criminal complaint filed by Jacobo." JA14 (¶ 16(iii)).  And when Pinchos died, "on
November 23, 2002, … the Foundation's Director declared that the only beneficiaries of Akipa
were Marlen and Benjamin." JA14 (¶ 16(iv)).  Moreover, "[i]mmediately after Pinchos' death,

### 2. The District Court's Orders and Procedural Background

On July 8, 2024, Appellant moved to intervene and simultaneously filed her opposition to the Application. Her opposition papers attached a copy of the Argentine court rulings (Spanish original and English translation) in both the Intestate and Partition actions described above. JA130-168. Specifically, Appellant brought the District Court's attention to the fact that Appellee Dussan had sought discovery of Appellant's assets in the Partition Action and the court had rejected it because he failed to comply with procedural requirements. She also demonstrated that in the Intestate Action, which followed Appellees' filing of the Application by a few days, the Argentine court had made clear Appellees were not yet "heirs" and that they would have to comply with procedural requirements in order to proceed. JA 130-134, Dkt. No. 18 at pp. 11-12. Appellant argued that in light of the Argentine rulings, the Appellees could not satisfy their burden of establishing that the discovery would be for use in Argentina, and that the true purpose of the discovery is to engage in broad asset discovery rather than any

---

Marlen and Benjamin ordered Akipa's Board to transfer the Foundation's assets to their respective newly opened personal accounts in Singapore and the Bahamas" JA15 (¶ 16(vi)). Thus, by Appellees' own account, in late 2002, Appellant and Benjamin, as sole owners of Akipa, transferred their assets as they deemed appropriate. Jacobo, in the meantime, was challenging his disinheritance by his late father but lost. JA12 (¶ 10). And while Appellees later sought to claim status as heirs to the estate notwithstanding their father's being cut out of Pinchos' will, the first time any court recognized their status, according to them, was on October 13, 2005. JA12-13 (¶ 10). As noted above, even today, Appellees' status as heirs remains in question. JA163. As sole owners, Appellant and Benjamin could not possibly have "misappropriated" their own assets.

tracing to the Pinchos estate. Dkt. No. 18 at pp. 7-9. She challenged Appellees to answer the question why they were in the U.S. when they could pursue their remedies in Argentina. *Id*. at pp. 11-12. She also argued that Appellees were seeking to circumvent the Argentine court processes and that the extraordinarily broad subpoena was an additional basis for rejecting the Application under the *Intel* factors. *Id*. at 12-13.

In their reply, Appellees quibbled about the form of the opposition papers but did not dispute the plain language of the Argentine court rulings. They did not address the ruling as to the Partition Action at all. Instead, they chose to focus solely on the Intestate Action ruling, and their Argentine counsel, Guillermo Jorge, assured the District Court that Appellees: "have in fact begun the process of complying with all the steps ordered by the Argentine Court, and they are not in default of any deadline." JA181-182 (¶ 6). He claimed that "the May 2024 decision confirms that there is a pending proceeding in Argentina, that Dussan has been admitted as a party (he was the initial claimant), that Mara and Ivan were summoned as interested parties and that they have the ability, and will, obtain the adjudication of their claims." JA181 (¶ 4). But he does not state that the discovery obtained in the U.S. would be used in the Intestate Action. He stopped short of it because the issue of Akipa assets and their relationship to the Pinchos estate were part of the Partition Action, not the Intestate Action. *See* JA163 (¶ II). Neither the

Jorge declaration nor Appellees' reply memorandum of law addressed the fact that

the Argentine court had rejected the request for discovery in the Partition Action,

nor did they answer the question why Appellees are in New York rather than in

Argentina.

On July 11, 2024, the District Court scheduled a conference to be held on

September 20, 2024. JA178.

      i.    <u>September 3 Order</u>

On September 3, 2024, however, the court summarily granted the

Application without a hearing or further factual development.  It first granted Ms.

Kipperband's motion to intervene "in the event that rights need protection," and

cancelled the court conference. JA184. In a separate docket entry the same day, the

District Court granted Appellees' Application, authorizing them to serve the Banks

with the subpoenas. JA183. No separate opinion memo was attached to the docket

entry order.  The court noted that "[s]ince the objects of discovery go back to

2002," Appellees should inform the Banks they may raise burden objections in

accordance with Fed. R. Civ. P. 45(d).  The court did not otherwise order any

modification to the sample subpoena. JA183.

The order did not address at all the fact of the Argentine court ruling that

rejected Appellees' efforts to obtain discovery of Appellant and Benjamin's assets.

Indeed, none of Appellant's arguments were addressed.  The court appeared simply

19

to adopt Appellees' conclusory claim that it would use the discovery in the Argentine proceeding. The court's entire discussion of the "for use" element of Section 1782 is as follows: "The information intended to be elicited is for use in those proceedings, and does not appear to be privileged. The banks are not parties to those proceedings. The Argentinian proceedings involve disputes over inheritance, between certain children of a testator, and grand-children of a deceased son of the testator. The grand-children are the petitioners here. The grandchildren seek to discover transfers of funds to their uncles [sic][4] to hide such funds from the Argentinian courts." JA183.

      ii.   <u>September 25 Order</u>

Appellees subsequently served the subpoenas on the Banks in substantially the same form as the sample subpoena, but with the additional notation that the Banks could raise burden objections. JA193-194 (¶¶ 3-4). On September 13, 2024, Appellant moved to quash the subpoenas pursuant to Rules 45(d) and 26 of the Federal Rules of Civil Procedure because they lacked specificity, sought irrelevant materials and threatened to seriously impact her privacy interests. JA185; Dkt. No. 27 pp. 6-15. On September 25, 2024, the Court denied the motion to quash. JA187-188. Citing its broad discretion to "liberally" apply Section 1782, the court held that "[t]he presence of a Liechtenstein Stiftung to hold and move funds that

---

[4] Appellant Marlen Kipperband is an aunt, not uncle, of Appellees.

20

are hard to trace justifies a broader sweep of discovery. The aunts and uncles [sic][5]

have not shown any burden to themselves or any invasion of their privacy that

could not be cured by a protective order." JA188. Once again, the District Court

did not even acknowledge the Argentine court ruling despite Appellant's heavy

reliance on it.

   iii. <u>Order Denying Stay Pending Appeal</u>

  On September 30, 2024, Appellant timely filed a notice of appeal from the

September 3 and 25 Orders. JA189-190. She simultaneously moved the District

Court for a stay of the subpoenas pending appeal. JA191-192. Once again,

Appellant emphasized that in light of the Argentine proceedings and court ruling,

the Application should never have been granted and that the other equity factors

favored a stay pending appeal. Dkt. No. 35 pp. 3-10.

  On October 15, 2024, the District Court denied the stay motion. In

concluding that Appellant had not shown a likelihood of success on the merits, the

court dismissed her citation to this Court's holding in *Kiobel by Samkalden v.

Cravath, Swaine & Moore, LLP*, 895 F.3d 238 (2d Cir. 2018). JA208-209. It

further held that Appellant had not shown irreparable harm because her privacy

concerns could be addressed through a protective order. JA209. In fact, the court

concluded, the <u>Appellees</u> could be prejudiced by a further delay because the

---

[5] There is only one aunt and one uncle whose assets are sought.

Argentine dispute "has gone on for over twenty years" and "there is reason to believe that some records sought by the Applicants may be deleted under the banks' five-year document retention policies." *Id.* The court offered no factual support for this speculative concern in the face of subpoenas the Banks had already received.

Appellant moved this Court for a stay pending appeal, which was temporarily granted, pending review by a three-Judge panel, on October 29, 2024.

## STANDARD OF REVIEW

This Court reviews a district court's conclusion that an application satisfies Section 1782's statutory prerequisites *de novo. Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015). It reviews a district court's application of Section 1782's discretionary factors for abuse of discretion. *In re Accent* Delight, 791 F. App'x. at 250. A district court abuses its discretion whenever it "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its ruling on a clearly erroneous factual finding; or (3) reaches a conclusion that . . . cannot be located within the range of permissible decisions." *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (internal quotations omitted).

## SUMMARY OF ARGUMENT

**I.**     The District Court erred in concluding that Appellees met their burden of demonstrating the discovery they sought would be "for use" in Argentine legal proceedings, as required by 28 U.S.C. § 1782.  The key question raised in any application for judicial assistance is what is happening in the foreign proceeding that warrants assistance from U.S. courts.  Yet here, Appellees' Application omitted any mention of the fact that the Argentine court had rejected Appellee's efforts to get similar discovery of Appellant's and her brother's assets.  Until and unless Appellees complied with the procedural defects of their application in Argentina, there was no proceeding in which any discovery of assets could be "for use."

Even after Appellant pointed out this omission in the Application, Appellees never explained how, when or whether they would (or could) amend their pleadings to revive their efforts in Argentina regarding discovery of assets related to Pinchos' estate.  They ignored the matter altogether.  Thus, as the record stood, there is no foreign proceeding into which any discovery obtained in the U.S. could be "for use."

Moreover, it is clear from the face of the proposed, sweeping subpoena, that Appellees were engaged in asset discovery they could use to further some future judgment enforcement proceeding, and that their discovery is not designed to

obtain evidence for use in any extant proceeding. Subpoenas that sought 22-years'
worth of financial data without regard to subject matter could not reasonably lead
to useful evidence of transactions that trace back to 2002/2003. This Court has
made clear that judicial assistance should not be granted to further asset discovery
in some contingent, speculative proceeding in the future.

Under these circumstances, Appellees' boilerplate assurance to the District
Court that they would make use of discovery in Argentina came nowhere close to
satisfying their burden of demonstrating the "for use" statutory requirement. Yet
the District Court, with no discussion of the Argentine court ruling or the undefined
effort to obtain asset discovery, granted the Application. Its cursory order, with no
analysis of the record whatsoever, was error and requires reversal.

**II.** Even if this Court were to find no error as to the "for use" requirement, the
Court should reverse the grant of judicial assistance as an abuse of discretion
because the weight of the *Intel* factors overwhelmingly militated against judicial
assistance. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65
(2004). The first factor focuses on whether the actual owner of the information or
documents sought in discovery are parties to the foreign proceeding, such that the
foreign court can obtain them without the need for judicial assistance from the U.S.
courts. Here, the bank records Appellees say they seek (namely bank records
showing assets traceable to Pinchos' estate) are those of Appellant and her now

deceased brother Benjamin, who have appeared as parties to litigation in Argentina. There can be no question of the Argentine court's authority to order production of such materials if and when Appellees comply with procedural prerequisites, and the court deems the discovery appropriate. Appellees themselves sought such discovery from that very court.

The third *Intel* factor is whether the Application conceals an effort to circumvent Argentine processes, and the facts and circumstances suggest that it does. Two days after their adverse ruling in Argentina, Appellees brought their Application *ex parte* and failed to disclose the court ruling. Instead, Appellees represented to the District Court that their request was the only practical and efficient way to obtain the discovery. These circumstances suggest an effort at concealment of their circumvention of the Argentine court's order.

The Application also fails the fourth *Intel* factor that asks whether the discovery is unduly burdensome or intrusive. Judicial assistance that seeks irrelevant materials that harass third parties will be rejected. That is precisely what the Application seeks to do here. The proposed subpoena, seeking 22 years' worth of financial data belonging to Appellant, Benjamin and their children is unreasonably broad and intrusive. It seeks to obtain, from 14 financial institutions, every bank transfer exceeding $5,000 during the 22-year period, and makes no mention of Pinchos or his related assets. It is not limited by any subject matter

25

whatsoever. As such, the discovery fails Rule 26's relevance requirement and threatens to sweep in financial information having nothing to do with any estate dispute in Argentina. This would constitute an egregious intrusion into Appellant's and her relative's private affairs. But the District Court dismissed this concern stating that it could be addressed with a protective order. The court ignored Appellant's argument that no such order could protect against Appellees and their counsel reviewing her private matters that have no relevance to any litigation.

The District Court's failure to evaluate the *Intel* factors was an abuse of discretion that requires reversal of its grant of the Application.

**III**. Even if this Court were to affirm the grant of the Application, it should reverse the District Court's denial of Appellant's motion to quash the subpoenas pursuant to Rules 45(d) and 26 of the Federal Rules of Civil Procedure. For the same reasons as discussed regarding the fourth *Intel* factor, the District Court abused its discretion in refusing to quash the extraordinarily broad and intrusive subpoenas served upon 14 financial institutions seeking Appellant's bank records spanning 22 years for every transaction over $5,000, without any subject matter limitation.

**ARGUMENT**

**POINT I**

**THE DISTRICT COURT ERRED IN CONCLUDING
DISCOVERY WOULD BE "FOR USE" IN FOREIGN PROCEEDINGS**

With virtually no analysis, the District Court concluded that Appellees satisfied the statutory requirement of demonstrating that the discovery they seek here would be "for use" in an Argentine proceeding. JA183.  Its only rationale was that "[t]he Argentinian proceedings involve disputes over inheritance, between certain children of a testator, and grand-children of a deceased son of the testator. The grand-children are the petitioners here. The grandchildren seek to discover transfers of funds to their uncles[6] to hide such funds from the Argentinian courts." *Id*.  In so holding, the court effectively ignored the record as well as the law.

The "for use" requirement is a statutory precondition for judicial assistance, *Mees*, 793 F.3d at 297; *In re Gorsoan*, 843 F. App'x. at 355, and one that Appellees had the burden of demonstrating. *Certain Funds,* 798 F.3d at 122 n.11.  They were required to establish "the practical ability … to place [the documents sought]—or the information [they] contain[]—before a foreign tribunal", *In re Accent Delight*

---

[6] Benjamin is an uncle of the Appellees, but Appellant Marlen Kipperband is their aunt, not uncle.  This mistake appears to have been lifted from the Appellees' brief in reply to Appellant's opposition, where their counsel wrote that they wanted "to obtain evidence relating to undisclosed assets of Applicants' uncles Marlen and Benjamin." Dkt. No. 4, p.1.

27

*Int'l Ltd.*, 869 F.3d at 131 (emphasis in original), and that it would be capable of "employ[ment] with some advantage" in that proceeding. *Mees*, 793 F.3d at 298. Their showing must be "more than merely speculative," *Mangouras*, 980 F.3d at 101, and instead demonstrate "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Certain Funds*, 798 F.3d at 123 (citation omitted).

Appellees did not even try to satisfy this burden. The thrust of Appellees' claims is that shortly after Pinchos died in November 2002, Appellant and Benjamin had transferred Pinchos' holdings in a company called the Akipa foundation and that they did so in late 2002 and throughout 2003. JA14-17. They claim that they seek discovery to "reversely trace" Appellant and Benjamin's assets to the Akipa assets. JA19-20 (¶¶ 24, 29). In what Argentine proceeding would they present this discovery? Aside from conclusory, boilerplate assurances, Appellees offer no detail, referencing instead both the Intestate Action and the Partition Action as "Foreign Proceedings". JA10 (¶ 1). This ambiguity was likely intentional, because a detailed examination of the Argentine proceedings would have required them to acknowledge that, just two days prior to their Application, the Argentine court had denied Appellees' request for virtually identical information about Appellant's assets. In the Partition Action, Appellee Dussan made the same allegations of "misappropriation" as in the Application and he

sought, *inter alia*, "production of . . . evidence with the purpose of . . . subsequent restitution to the estate"; and "request[ing] the drawing up of an inventory including the assets herein disclosed." JA91.[7]  Moreover, this was not the first attempt at discovery in Argentina. Dussan's Partition Action also revealed that Appellees Mara and Ivan Kipperband had previously sought similar discovery via letters rogatory from the Argentine court and been "unsuccessful;" he argued that that should not preclude his new request for discovery. JA105.  In rejecting this application, the Argentine court found the pleadings procedurally defective for a number of reasons, including the fact that Dussan first "must duly comply with the provisions Section 330, Procedural Code, . . . specifying [the] claim's subject matter, i.e., the assets owned by deceased whose settlement . . . is sought." JA132-133 (¶ 13) and JA154. In other words, Dussan was to set forth Pinchos' assets in 2002 when he died. JA132-133(¶ 13) and JA175.

In light of this ruling, there was no extant foreign proceeding in which they had "practical ability to place" the discovery about asset tracing, and no proceeding where they could employ the discovery "with some advantage."  Appellees did not even offer "speculation" to explain how or where their discovery could be useful. Instead, they omitted any mention of the ruling in their Application.  Even when

---

[7] Appellees' own account of the chronology of events undermines their claim of "misappropriation."  Appellant and Benjamin were the sole heirs of Pinchos according to his will and the sole owners of the Akipa assets after their father died.  (*See supra* at 16 n.3, 17).

confronted with it by Appellant's opposition, Appellees still avoided any discussion of it. *See* Dkt. Nos. 20, 21.[8]

This avoidance is fatal to the Application because they could not meet their burden of satisfying the "for use" element. Even if Appellees had proffered some plan to comply with the Argentine ruling, it would have amounted to mere speculation, not the required "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Certain Funds*, 798 F.3d at 123 (internal quotations omitted). As this Court recently held: "[i]f an applicant's ability to initiate a proceeding in which the requested discovery may be used 'depends on some intervening event or decision,' the applicant must 'provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable.'" *In re BonSens.org*, 95 F.4th 75, 80-81 (2d Cir. 2024) (quoting *IJK Palm*, 33 F.4th at 680).

---

[8] As to the Intestate Action where the Argentine court also ruled that Appellees were required to satisfy procedural requirements before that case could proceed (JA154), all that Appellees would say, in effect, is: "we're working on it." JA182 (declaration stating Appellees "have in fact begun the process of complying with all the steps ordered by the Argentine Court, and they are not in default of any deadline"). But even here, Appellees stopped short of representing that the U.S. discovery would be used in the Intestate Action. JA180-181 (¶¶ 3-5). Presumably, that is because the issues about Pinchos and the Akipa assets were germane only to the Partition Action. *See supra* 10-13. In the Intestate Action, the court ruled that even their basic status as "heirs" was in question, subject to their compliance with procedural requirements. JA163. And it further rejected asset discovery issues as "beyond the scope of knowledge" of that proceeding and referred it to the Partition Action. *Id.*

Thus, in *In re Bonsens*, the Court rejected "for use" arguments where the applicant proffered far more concrete plans concerning foreign proceedings in France. The French courts had dismissed the foreign proceeding on jurisdictional grounds. 95 F.4th at 81. The applicant nevertheless argued that he was appealing from the dismissal order and that the discovery he sought would assist the French court in connection with the jurisdictional question. *Id*. The applicant submitted an expert declaration in support. After evaluating the content of that declaration as well as the issues on appeal in France, the Court deemed his proffer speculative. *Id*.

Here, it was not possible to conduct such an evaluation because Appellee never even acknowledged the adverse Argentine ruling, much less proffer a pathway to reviving the proceeding where evidence could be presented. The record is devoid of any facts as to what efforts Appellees have made to address the procedural infirmities of their pleadings, when they will do so, or if they can even do so. Nor do they explain how the U.S. discovery would be relevant in that hypothetically revived action. In the nearly 6 months since the Argentine court rendered its decisions, there are no answers to any of these questions. There is thus no basis for concluding that the use of discovery is "within reasonable contemplation" of a foreign proceeding. *In re Bonsens,* 95 F.4th at 81.

Not only did Appellees fail to establish an extant "foreign proceeding" in which the discovery would be used, they failed to establish that their U.S.

31

discovery could be employed "with some advantage" in that proceeding. *Mees*, 793 F.3d at 298. Their subpoenas do not seek matters that are relevant to the estate dispute in Argentina, even though relevance is a necessary element "as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds*, 798 F.3d 120 n.7. Appellees' goal instead is generalized asset discovery, which is an improper basis for judicial assistance. *Euromepa, S.A. v. R. Esmerian, Inc*., 154 F.3d 24, 28 (2d Cir. 1998).

This is evident from the face of the subpoenas themselves. While Appellees claim they seek bank information that would enable them to "reversely trace" Appellant's and Benjamin's assets to the Pinchos estate and the Akipa assets in particular (JA19 (¶ 24)), the subpoenas seek no such information. Instead, they demand that the Banks describe <u>every</u> transfer exceeding $5,000 from November 2002 to the present, involving Appellant, Benjamin and their respective children and affiliated corporate entities. JA198-201. The proposed subpoena makes no reference whatsoever to Pinchos, the Akipa foundation or any of his assets in any respect. Indeed, it is not limited by any subject matter. What such subpoenas will turn up are facts regarding Appellant's and Benjamin's assets generally, not their tie to any estate dispute.

32

Moreover, as discussed *infra* at 45-47, the timing of their Application makes it highly unlikely the subpoenas could result in any tracing information at all. According to the Application, Appellees' father learned of the Akipa assets in 2014 (JA13 (¶ 13)), yet they took ten years to seek this discovery. Appellees have never explained this delay. In *In re Nascimento*, the district court concluded that a 13-year delay in bringing the application was a sufficient basis for quashing subpoenas it had previously authorized, because they would not provide an "efficient means of assistance" to foreign proceedings. No. 14-mc-0020 (RMB), 2014 WL 4457141, at *1 (S.D.N.Y. May 13, 2014); *aff'd sub nom. Nascimento v. Faria*, 600 F. App'x 811 (2d Cir. 2015). This is especially so where, as here, bank records are involved, as it is highly unlikely that any bank would have retained records dating back to 2002 and 2003, the period of the alleged Akipa asset transfers. JA14-17. Appellees provided no basis for believing that any bank would retain records dating back to 22 or 21 years. To the contrary, in their opposition to a motion to stay pending appeal, Appellees claimed that the Banks may routinely delete responsive records even after being served with subpoenas. Dkt. No. 40, pp. 7-8. And the District Court said the same, referring to a five-year record retention policy. JA209. Thus, the terms of the proposed subpoena and its timing demonstrated a search for asset discovery, not a tracing exercise.

Appellees themselves seemed to concede this, as they expressly argued that a Section 1782 application "can be used to permit asset discovery in relations with adjudicative proceedings to be commenced as a means of enforcing or collecting a judgment." Dkt. No. 4, p. 12.

But this is wrong. This Court has held that the foreign proceeding must be adjudicative in nature as to the merits of a dispute and denied judicial assistance where asset discovery is sought for an enforcement proceeding. In *Euromepa, S.A.*, the applicant sought discovery for a pending French bankruptcy proceeding, but the bankruptcy was just to enforce a previously obtained judgment. The Court held the bankruptcy proceeding was not adjudicative; it was merely the means by which an "already extant judgment [was] being enforced." 154 F.3d at 28. The "merits of the dispute . . . ha[d] already been adjudicated" and would not be revisited in bankruptcy. *Id*. Similarly, in *In re Gorsoan*, 843 Fed. Appx. 352 (2d Cir. 2021), the Court reversed a grant of judicial assistance when the applicant sought asset discovery for use in a potential contempt proceeding and not for the merits of the underlying claims. *Id*. at 354-55. *See also Jiangsu Steamship Co., Ltd. v. Success Superior Ltd*., No. 14-cv-9997 (CM), 2015 WL 3439220 at *4 (S.D.N.Y. Feb. 15, 2015) (denying judicial assistance for discovery to identify assets that could be attached as security for eventual award in arbitration proceeding); *In re Asia Mar. Pac., Ltd*., 253 F. Supp.3d 701, 706-07 (S.D.N.Y.

2015) (same); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15-mc-319 (LTS), 2015 WL 5824505 *2 (S.D.N.Y. Oct. 6, 2015) (denying judicial assistance where "[a]ny discovery . . . would only be in relation to a contemplated post-judgment action, which *Euromepa* holds is not a 'foreign proceeding' within the meaning of [S]ection 1782.").

Just as it ignored the Argentine court ruling, the District Court simply did not address the broad scope of the proposed subpoena, unlimited by subject matter, or the late timing of its alleged effort to "trace" assets back to 2002/2003. Instead, it summarily concluded that Appellees "seek to discover transfers of [Pinchos estate] funds to [Appellant and Benjamin] to hide such funds from the Argentinian courts" JA183. The order, devoid of any meaningful analysis of the record or the law, was error and must be reversed.

## POINT II
### THE DISTRICT COURT ABUSED ITS DISCRETION IN FAILING TO WEIGH THE *INTEL* FACTORS

Even if Appellees are found to have satisfied the "for use" statutory requirement, their Application fails the *Intel* factors. "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. It should instead consider the four factors set out in *Intel*. *Id.* at 264-265. There is no indication that the District Court

reviewed any of the factors, much less applied them in compliance with Second Circuit law. That in itself warrants reversal. *See Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 413 (1983) (to decide whether action was abuse of discretion, "we must determine whether the [court] adequately considered the factors relevant" to the question); *Huang v. I.N.S.*, 436 F.3d 89, 99 (2d Cir. 2006) (court's "failure to weigh the relevant factors" is "manifestly contrary to law" and constitutes an abuse of discretion).

### A. The District Court Failed to Consider the First *Intel* Factor

The first *Intel* factor requires courts to consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. "[W]hen the real party from whom documents are sought. . . is involved in foreign proceedings, the first *Intel* factor counsels against granting Section 1782 petition seeking documents." *Kiobel*, 895 F.3d at 245. This factor focuses on whether "for all intents and purposes" the applicants are seeking discovery from their adversary in the foreign proceeding. *Frasers Grp.*, 95 F.4th at 59. *See In re Porsche Automobil Holding SE*, No. 15-mc-417 (LAK) 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016) (the question is "whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application.") Thus, as this Court held in *Schmitz v. Bernstein Liebhard & Lifshitz,*

*LLP*, 376 F.3d 79, 85 (2d Cir. 2004): "Although technically the respondent in the district court was [a law firm], for all intents and purposes petitioners are seeking discovery from . . . their opponent in the [foreign] litigation. *Intel* suggests that . . . petitioner's need for § 1782 help is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."

Here, Appellees claim that they are trying to get bank information regarding Appellant's and Benjamin's financial transfers to show how they allegedly spirited away assets of Pinchos. The first *Intel* factor militates against their Application for the simple reason that the Argentine court can fully address such discovery requests. By their own theory, those records would be ones Appellant and Benjamin's representatives have control over, and they have appeared as parties in the Argentine estate dispute. In fact, that is precisely why Appellees asked the Argentine court to order asset discovery in the Partition Action. JA91, JA96. Moreover, Appellee Mara and Ivan apparently sought from that court letters rogatory for the same information. JA105. While the Argentine court found their pleadings procedurally defective, there is no question that it has authority to grant the discovery if and when Appellees comply with the requirements and the court deems it appropriate to do so.

In *Kiobel*, this Court reversed the same District Court (Hellerstein, J.) in part on the basis of the first *Intel* factor. 895 F.3d at 245. The applicant sought

documents from the law firm Cravath Swaine & Moore for use in a Netherlands proceeding, against Cravath's client Shell. *Id*. at 240. The Court stated: "We conclude that the district court erred in its analysis and application of the four *Intel* factors. . . . [W]hen the real party from whom documents are sought (here, Shell) is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company." *Id*. at 245.

In denying the motion to quash, the District Court did not address the first *Intel* factor, *Kiobel,* or any of Appellant's other cited cases. It was not until Appellant's subsequent motion to stay pending appeal (JA208-210), that the court finally addressed *Kiobel*, but in doing so, the court entirely misconstrued the case. It stated:

> The Court in *Kiobel* held that the district court had abused its discretion in granting Section 1782 discovery because the party from whom documents were sought in that case was involved in the foreign proceedings, …. The Applicants seek documentary evidence from banks, uninvolved in the Argentinian proceedings, which are located in the Southern District of New York. This discovery is properly granted under Section 1782.

This confused the *Kiobel* holding. "[T]he party from whom documents were sought" was <u>not</u> involved in the foreign proceeding. The respondent was Cravath, here in New York. The documents that applicant sought from Cravath were those of Cravath's client, Shell, a company that was a party in the Netherlands. *Kiobel*,

895 F. 3d at 244-46. Thus, *Kiobel*'s analysis of the first *Intel* factor mirrors the facts here. The respondent Banks are in Cravath's shoes, and Appellant is in Shell's. Just as applicant in *Kiobel* should have sought discovery against Shell in the Netherlands rather than seeking those documents through Cravath here, so too must Appellees seek Appellant's documents in Argentina and not through the Banks. The District Court simply misconstrued this principle.

The District Court also declined to address other cases cited by Appellant, including *In re Ex parte Klein*, No. 23-mc-211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) (Engelmayer, J.), where the district court quashed a subpoena (after initially granting an ex parte application for judicial assistance). That case involved facts strikingly similar to those here. The applicant was embroiled in an estate dispute in Brazil and sought to subpoena numerous banks for information about his adversaries in Brazil. *Id*. at *4. The court held: "To the extent that the recipients of [applicant's] subpoenas (U.S. financial institutions) prove to have responsive materials . . . such materials by definition will be the financial records of the parties to the Brazilian civil proceedings. . . . The [banks] do not have any independent records germane to the Brazilian courts." *Id*. at *11. Similarly, in *In re Hranov*, No. 21-mc-751 (PKC), 2024 WL 2193866, at *2 (S.D.N.Y. May 15, 2024) (Castel, J.), the court held: "[b]ecause there is no pretense that [applicant] seeks documents pertaining to the operations of [a bank],

39

and seeks solely information relating to her foreign adversary, the motion to quash will be granted." *See also In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir.1997) (when the discovery sought is "equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the §1782 application was duplicative").

The District Court's failure to address any of these cases, which properly applied the first *Intel* factor, was an abuse of discretion. The record is clear that Appellees simply did not require judicial assistance as the same discovery could be (and indeed, was) sought in Argentina.

### B. The District Court Failed to Consider the Third *Intel* Factor

The third *Intel* factor is whether the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country". *Intel* 542 U.S. at 264-65. The circumstances powerfully indicated that Appellees were trying to do just that. Just two days after the Argentine court rejected their efforts to obtain discovery of Appellant's and Benjamin's assets, Appellees came to New York seeking the same discovery. And when they did, their e*x parte* Application did not disclose the fact of the Argentine ruling to the District Court. To the contrary, they assured the court that their Application "does not seek to circumvent any existing or anticipated evidence gathering restrictions

40

imposed in Argentina." JA21 (¶ 34). In seeking *ex parte* treatment, the Application further claimed: "The information sought through this *ex parte* Application is the only practical and efficient way Applicants can obtain the discovery sought." JA22 (¶ 37). There was no way the court could evaluate such representations when it was left in the dark about what had just happened in Argentina.

Appellees' decision to omit that court ruling was no oversight. Even when Appellant's opposition confronted them with the decision, Appellees' reply papers refused to address it, relying instead on a series of meritless complaints about the form in which the Argentine rulings had been presented in the opposition. Dkt. No. 20, pp. 2-3. They at no time argued that the copies of the Argentine court rulings attached to Appellant's papers was inaccurate nor did they contest the English translation of the rulings. They preferred the court not look at them.

Without a hearing or argument, the District Court similarly gave no attention to the Argentine ruling. That was an abuse of discretion. It was not possible to evaluate the third *Intel* factor without closely examining the Argentine ruling and probing Appellees as to why the Application did not disclose it. A meaningful analysis of the factor would also have required questioning Argentine counsel on his declaration statement that "[t]he information sought through this *ex parte* Application is the only practical and efficient way Applicants can obtain the

41

discovery sought." JA22 (¶ 37). How could this be correct if he and Appellees had sought the same discovery in Argentina and failed because of procedural prerequisites? An inquiry of counsel may well have revealed that the reason why they did not seek to address the procedural problems with their application was that they could not do so for substantive reasons.

In *Kiobel*, this Court found that "under the third *Intel* factor, statements made by Kiobel's counsel demonstrate that Kiobel is trying to circumvent the Netherlands' more restrictive discovery practices, which is why they are seeking to gather discovery from Cravath in the U.S." 895 F. 3d at 245. The telling statement by Dutch counsel was that "'it is hardly possible for a party to obtain evidence from another party pre-trial' in the Netherlands'. . . . So to bypass Dutch discovery restrictions and gain access to documents she could not otherwise acquire, Kiobel is turning to Section 1782." *Id*. at 245 n.3.

Here, the record is silent on why Appellees are not continuing to pursue discovery in Argentina, and what they mean by claiming their Application is the "only" practical and efficient way to obtain the discovery. It is silent because Appellees refused to address the Argentine ruling. These facts and circumstances all point to Appellees' effort to "conceal an attempt at circumvention." At a minimum, the District Court was required to evaluate this factor by inquiring further, but it ignored it altogether.

42

### C. The District Court Failed to Consider the Fourth *Intel* Factor

The fourth *Intel* factor considers whether the requested discovery constitutes an undue intrusion or burden. *Mees*, 793 F.3d at 298; *Intel*, 542 U.S. at 265. To determine this, courts will "apply[] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees* at 302. Rule 26(b)(1) limits the scope of discovery to "relevant" material "proportional to the needs of the case". *In re Elvis Presley Enters., LLC*, No. 15-mc-386 (DLC), 2016 WL 843380, at *5 (S.D.N.Y. March 1, 2016). Moreover, if "a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *In re Application of Euromepa, S.A.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). *See also Mees*, 793 F.3d at 299 n.10.

In both her opposition to the Application as well as her motion to quash, Appellant argued that this factor undermined the Application given the intrusiveness of the proposed subpoena that sought 22 years' worth of her and her children's financial data without any subject matter limitation. Dkt. No. 18, p. 13-14; Dkt. No. 27, pp. 6-14. In granting the Application, the District Court did not address the question of relevance or intrusion into privacy at all, stating only that any burden on the Banks could be addressed by motions they may choose to bring

under Rule 45(d). JA183. The District Court did address the privacy concerns, but in the most cursory (and incorrect) manner, when it denied Appellant's subsequent motion to quash. It held: "[t]he presence of a Liechtenstein Stiftung to hold and move funds that are hard to trace justifies a broader sweep. The aunts and uncles have not shown any burden to themselves or any invasion of privacy that could not be cured by a protective order." JA188. This order effectively condoned a fishing expedition and left Appellant's private financial transactions, having zero to do with any estate dispute, exposed to Appellees' and their counsel's review. It was an abuse of discretion.

The proposed subpoena on its face failed Rule 26's relevance test in at least two principal ways. First, it contains no subject matter limitation and, second, it is woefully untimely.[9] Addressed to 14 respondent Banks, the subpoenas seek "all wire transfers" exceeding $5,000 for intermediary and correspondent bank transactions, "as well as bank records relating thereto"; "all CHIPS or Fedwire payment messages", and "all responsive payment messages" from November 2002 to the present. Such records are sought for Appellant, Benjamin, their respective

---

[9] In addition, Appellees made no effort to explain why the 14 Respondent Banks are being subpoenaed or whether any of them had connections to Appellant, Benjamin or any of the other "family members, and other related entities and individuals" whose records they demand. JA21 (¶ 31). The Application should have been rejected on this basis alone. *See In re Asia Mar. Pac. Ltd.,* 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015); *In re Klein*, 2023 WL 8827847, at *13 (S.D.N.Y. Dec. 21, 2023).

children and three affiliated companies. Appellees claim they seek to "reversely trace" Appellant and Benjamin's assets to the Pinchos estate and Akipa assets, but their subpoena contains no subject matter limitation and makes no mention of Pinchos or the Akipa assets at all. The subpoenas are thus specifically designed to vacuum in all private transactions whether relevant to the Argentine proceedings or not. The breathtaking scope of the discovery request plainly violates both the relevance and proportionality requirements of Rule 26.

Moreover, because the Application was brought so late, the subpoena is virtually certain to discover nothing that can be traced to the alleged transfer of Pinchos assets in 2002 and 2003. According to Appellee's account of the chronology, Appellant and Benjamin would have transferred, in particular, the Akipa foundation assets immediately after Pinchos' death in November 2002 and continued their efforts through 2003. JA14-17. They further allege that their father Jacobo learned about this in 2014. JA13 (¶ 13). But it inexplicably took them ten years to bring this Application for discovery. In her motion to quash, Appellant pointed out that Banks have no obligation to maintain records older than 6 years in New York. Dkt. No. 27, p.10 (citing N.Y. Banking Law § 239-a). Thus, to the extent the Banks still have any records that are responsive to the open-ended subpoenas, they almost certainly cannot tie back to events in 2002. As such, the

subpoenas are unlikely to yield any record relevant and "for use" in the Argentine estate dispute.

Neither Appellees nor the District Court had any response to this. They did not deny the fact that banks generally do not keep records for decades.  Indeed, in opposing Appellant's stay motion pending appeal, they even strongly <u>endorsed</u> the view that banks destroy records after a few years.   Appellees argued that they would be prejudiced by a stay because banks might even delete files pursuant to their standard record retention policies, <u>even after receiving a subpoena</u>. Dkt. No. 40, pp. 7-8.  And, in denying the stay motion, the District Court adopted this view, stating that banks have a 5-year retention policy. JA209.  They cannot have it both ways.  If it is true that the Banks routinely destroy records after just five years or so avidly delete records that even their receipt of a subpoena will not prevent it, then the Banks likely have no records that go back 22 years.

Thus, Appellees' proposed subpoena is not actually designed to uncover any relevant evidence of transfers of Akipa or Pinchos assets for use in Argentina; its real goal is discovery of Appellant and Benjamin's <u>current</u> assets, as discussed *supra* at 34-35.   At best, Appellees and the District Court's position is that because something relevant might come up, everything should be taken.  This is the very picture of a fishing expedition motored by speculation.  The Application should have been swiftly denied. *See Frasers Grp.*, 95 F.4th at 60 (affirming district court

46

finding that fourth *Intel* factor weighed against granting §1782 discovery because the requested discovery "bore little relevance to [the applicant's foreign] claims").

The proposed subpoena not only violates the relevance requirement of Rule 26; it threatens egregious intrusion into Appellant's and her children's privacy. This Court has made clear that such discovery should be rejected outright. *See In re Application of Euromepa, S.A.*, 51 F.3d at 1101 n.6 (court may deny Section 1782 application in toto if application is made "for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials"). *See also Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("if a court suspects that the Section 1782 discovery request is a fishing expedition, or a vehicle for harassment, the district court should deny the request."); *Cf. In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) (one goal of Rule 26 is "to protect an individual non-party against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression.").

The subpoena calls for countless bank transactions that each of Appellant, Benjamin and their respective children made over the past several years that may involve things as private as medical payments, personal gifts, charitable payments, or payments to professionals. The District Court's cursory treatment of this concern by gesturing to a potential protective order, JA188, 209, missed the mark.

No protective order can prevent Appellant's adversaries in Argentina, the Appellees and their lawyers, from having access to private, irrelevant information. It was this intrusion that Appellant identified in her motion to quash (Dkt. No. 27, pp. 6-12), and the court seems to have entirely ignored it.

The District Court also declined to address any of the cases cited by Appellant including *In re Klein* that diametrically clashed with its conclusions. After an exhaustive analysis, Judge Engelmayer quashed a Section 1782 sample subpoena that sought bank records from 12 (not 14) banks covering a period of 11 (not 22) years. 2023 WL 8827847 at *3. Rejecting the proposed subpoena as overbroad, the court said: "[t]he Court's determination that there is no nonspeculative basis for the subpoenas—that [the applicant] proposes to issue these in grapeshot fashion in the hope to discover accounts of his Brazilian adversaries—suggest that this application is a fishing expedition with the potential to be a vehicle for harassment of [applicant's] siblings." *Id.* at *14. That conclusion applied with equal, if not more, force in the facts of the instant case, but the District Court did not even seek to distinguish it.

Other courts have routinely rejected as overbroad even less onerous requests for discovery in Section 1782 applications. *See, e.g.*, *In re MT BALTIC SOUL*, 2015 WL 5824505, at *3 (§ 1782 application denied because of the "significant breadth" of the discovery requests); *In re Application of Auto-Guadeloupe*

48

*Investissement S.A.*, No. 12-mc-221 (RPP), 2012 WL 4841945, at *3, *10 (S.D.N.Y. Oct. 10, 2012) (quashing several § 1782 discovery requests that sought "all communications" or "all documents"); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-cv-1789 (ER), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (subpoena for "any and all documents" was overbroad and constituted a "fishing expedition") (citations omitted). *See also Morocho v. Stars Jewelry by the A Jeweler Corp.*, 345 F.R.D. 292, 295 (S.D.N.Y. 2024) (granting a motion to quash where the theory of relevance was "entirely too speculative to warrant a wholesale intrusion into the private affairs of the" moving party).

Both the unbounded scope of the subpoena and its untimeliness should have led to a finding that under the fourth *Intel* factor, the Application should be denied. Having failed to address either of those features of the subpoena or the relevant case law, the District Court's order was an abuse of discretion.

## POINT III
### THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 45 MOTION TO QUASH

Even if this Court were to affirm the grant of judicial assistance, it should reverse the District Court's order denying Appellant's subsequent motion to quash the subpoena brought pursuant to Rule 45. Rule 45(d)(3)(A) provides that, on timely motion, the court "must quash or modify a subpoena that. . . (iii) requires

49

disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden". This provision is not limited to the respondent to a subpoena. A court may quash or modify a subpoena to protect an individual non-party against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression. *Sierra Rutile Ltd. v. Katz,* No. 90-cv-4913 (JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994). Moreover, subpoenas issued under Rule 45 "are subject to Rule 26(b)(l)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, No. 05-cv-6992 RCC, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 26(c)(1) also contemplates orders to prevent unnecessary disclosure of matters that will result in "annoyance, embarrassment, [or] oppression" of the movant. Applying these principles, the court in *In re Glitnir* granted in part a motion to quash a subpoena in order "to protect an individual non-party against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression." 2011 WL 3652764, at *5.

For the same reasons that the District Court failed to evaluate and properly apply the fourth *Intel* factor, discussed above at Point II(C), it abused its discretion in denying the motion to quash. The unbounded terms of the subpoena could not help but intrude into irrelevant but private affairs of Appellant and her children that Appellees and their counsel have no business seeing. At a minimum, Rule 45

50

required that the court order Appellees to limit the scope of their subpoena to seek only materials relevant to the estate dispute in Argentina. Instead, the District Court focused exclusively on the potential burden on the Banks and dismissed Appellant's privacy concerns by gesturing to a potential protective order. No such order could prevent the invasion into her privacy that Appellant stressed in her motion. (Dkt. No. 27). The court's order should be reversed.

## CONCLUSION

For the foregoing reasons, the District Court's order should be reversed and Appellees' Application denied. In the alternative, the Court should reverse the District Court's denial of Appellant's motion to quash and remand for further proceedings to ensure the subpoenas comply with Rules 26 and 45(d) of the Federal Rules of Civil Procedure.

November 20, 2024                         Respectfully Submitted,

                                          /s/ Tai H. Park

PETER R. BRYCE                            TAI H. PARK
WHITEMAN OSTERMAN & HANNA LLP             TAI PARK PLLC
One Commerce Plaza, 19th Floor            7 World Trade Center, 34th Floor
Albany, NY 12260                          250 Greenwich Street
                                          New York, NY 10007
                                          (212) 301-7632
                                          tai@taiparklaw.com

                                          *Counsel for Intervenor-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Fed. R. App. P. 32(a)(7) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 12,070 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, with footnotes in 12-point Times New Roman font.

Dated: November 20, 2024

/s/ Tai H. Park

TAI H. PARK

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using the appellate ACMS/ECF system on November 20, 2024. All counsel of record are registered ACMS/ECF users, and service will be accomplished by the ACMS/ECF system.

Dated:        November 20, 2024

By: /s/ Tai H. Park

TAI H. PARK

SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Order Granting Motion for Discovery, filed
    September 3, 2024 ................................................. SPA-001

Order and Opinion Denying Motion to Quash,
    filed September 25, 2024 ..................................... SPA-002

28 U.S.C.A § 1782 .................................................... SPA-004

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:24-mc-00239-AKH**

In Re: Dussan David Kipperband, Ivan Kipperband, and Mara Kipperband
Assigned to: Judge Alvin K. Hellerstein
Cause: M 77 Application to have subpoena issued to person living in this district re: action in foreign cou

**Copied from Docket**

| | | |
|---|---|---|
| 09/03/2024 | 24 | ORDER granting 1 Motion for Discovery pursuant to 28 U.S.C. 1782The bases for discovery under 28 U.S.C. 1782 have been shown. The banks who are to be served with subpoenas are located within the Southern District of New York. The applicants are interested persons, since they are parties to pending probate and partition proceedings in Argentina. The information intended to be elicited is for use in those proceedings, and does not appear to be privileged. The banks are not parties to those proceedings.The Argentinian proceedings involve disputes over inheritance, between certain children of a testator, and grand-children of a deceased son of the testator. The grand-children are the petitioners here. The grandchildren seek to discover transfers of funds to their uncles to hide such funds from the Argentinian courts. Since the objects of discovery go back to 2002, the discovery requests, for these and other reasons, may well be unduly onerous, but that is the for the banks to raise by motions to quash. There also may be jurisdictional issues where banks are affiliates or correspondents of foreign banks outside this courts jurisdiction, or with regard to transactions not subject to the courts jurisdiction but, here too, the issues can be resolved pursuant to motions to quash. Since section 1782 is satisfied, and in the interest of justice, the motion for discovery is granted. A clause shall be added to the subpoenas providing that objections my be raised in accordance with Fed. R. Civ. P. 45 (d).That part of the motion seeking leave not to give notice to the uncles is denied. The uncles already know, and have moved to intervene. That motion will be treated in a separate order. (HEREBY ORDERED by Judge Alvin K. Hellerstein)(Text Only Order) (Hellerstein, Alvin) Transmission to Docket Assistant Clerk for processing. (Entered: 09/03/2024) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x
                                    :

IN RE: DUSSAN DAVID KIPPERBAND, IVAN    :    **ORDER AND OPINION**
KIPPERBAND, and MARA KIPPERBAND       :    **DENYING MOTION TO**
                                      :    **QUASH**
                                      :
                                      :    24 Misc. 239 (AKH)
                                      :

----------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This is an intra-family probate dispute in the Courts of Argentina seeking Section 1782 assistance from this Court. The testator, Pinchos Kipperband, disinherited his son, Jacobo, in response to criminal proceedings Jacobo brought against Pinchos. The Argentinian probate court upheld Pinchos' will (and, thus, Jacobo's disinheritance), but in a separate probate proceeding recognized Jacobo's three children, Dussan David, Ivan, and Mara Kipperband, as heirs of Pinchos. In that proceeding, the children sought to marshal assets that they claim their aunts, uncles, and grandfather secreted though a Liechtenstein Stiftung that was moved to Curacao, which wired funds to bank accounts belonging to the aunts and uncles. The discovery requested here seeks to identify those funds as they passed through, or to, fourteen identified banks and specified bank accounts of their Aunt Marlen, their Uncle Benjamin, and their children.

        I ordered discovery with certain conditions in my Order of September 3, 2024. ECF No. 24. I allowed intervention by the aunts and uncles so they could move to quash the subpoenas. ECF No. 25. I now deny their motion to quash.

        The aunts and uncles argue that the subpoenas are overbroad and intrusive, and that the children have failed to show a meaningful contact between any of these banks and funds wired to or through them to which they could lay claim.

1

However, Section 1782 is to be applied liberally to seek information to be used in a foreign proceeding, and district courts have broad discretion over the manner in which such discovery is to be handled. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017). The presence of a Liechtenstein Stiftung to hold and move funds that are hard to trace justifies a broader sweep of discovery. The aunts and uncles have not shown any burden to themselves or any invasion of their privacy that could not be cured by a protective order. *See In re West African Mineral Trading Ltd.*, No. 24 Misc. 114 (DEH), 2024 WL 3862293, at *5 (S.D.N.Y. Aug. 19, 2024) (citing the fact that "the requested discovery is not unduly burdensome or intrusive" as a factor in its decision to grant the requested discovery). And the recipients of the subpoena have not shown concern, at least as of now. Their right to do so is not affected by this Order.

The motion to quash is denied. The Clerk shall terminate the motion, ECF No. 26.

SO ORDERED.

Dated:    September **25**, 2024
          New York, New York

                                    ALVIN K. HELLERSTEIN
                                    United States District Judge

2

**SPA-003**

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part V. Procedure
      Chapter 117. Evidence; Depositions (Refs & Annos)

28 U.S.C.A. § 1782

## § 1782. Assistance to foreign and international tribunals and to litigants before such tribunals

Effective: February 10, 1996
Currentness

**(a)** The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

**(b)** This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

### CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 949; May 24, 1949, c. 139, § 93, 63 Stat. 103; Pub.L. 88-619, § 9(a), Oct. 3, 1964, 78 Stat. 997; Pub.L. 104-106, Div. A, Title XIII, § 1342(b), Feb. 10, 1996, 110 Stat. 486.)

Notes of Decisions (503)

28 U.S.C.A. § 1782, 28 USCA § 1782
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. SPA-004